IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:24-CT-3007-BO

|  |  |  |
|---|---|---|
| DARIUS TREMAYNE BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS HOWARD, JOHNSON,** |
| v. | ) | **JONES AND PEARCE'S** |
| | ) | **MEMORANDUM OF LAW IN** |
| CORRECTIONAL OFFICER HOWARD, | ) | **SUPPORT OF MOTION FOR** |
| et al., | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |

Defendants Howard, Johnson, Jones and Pearce (hereinafter "Defendants")[1], by

and through undersigned counsel, and submit this Memorandum in support of their

Motion for Summary Judgment. In summary, Defendants' Motion should be granted

because Defendants did not use excessive force and are entitled to qualified immunity.

## I.      STATEMENT OF THE CASE

Plaintiff Darius Tremayne Brooks (hereinafter "Plaintiff") asserted claims against

Defendants Howard, Johnson, Jones and Pearce for excessive use of force on January 22,

2023. [D.E. 15 at 5-7]. Plaintiff further asserted claims against Defendants Cooper and

---

[1] Former Defendants Cooper, Dover, and Gethers filed a Motion to Dismiss on May 23, 2025. [D.E. 39; D.E. 40]. This motion was granted on March 3, 2026, and former Defendants Cooper, Dove, and Gethers are no longer a part of this action.

Dove for alleged excessive use of force on January 23, 2023, and against Defendant Gethers for allegedly refusing to provide him clean clothes on January 24, 2023. [D.E. 15 at 7]. The Court's order of October 16, 2024, allowed Plaintiff's claims of excessive force to proceed against Defendants as nonfrivolous. [D.E. 18].

On May 23, 2025, Defendants filed an answer to Plaintiff's Amended Complaint, [D.E. 38] and Defendants Cooper, Dove, and Gethers filed their motion to dismiss and memorandum of law in support. [D.E. 39, 40]. Plaintiff responded in opposition. [D.E. 46].

On May 4, 2026, this court dismissed Defendants Cooper, Dover and Gethers from this action. [D.E. 58]. The only remaining claim in this action is Plaintiff's Eighth Amendment Excessive Use of Force as to Defendants Howard, Johnson, Jones and Pearce. Dispositive Motions are due August 5, 2026, pursuant to the Amended Scheduling Order filed on March 6, 2026. [D.E. 59].

## II. STATEMENT OF FACTS

**Plaintiff's Background**

On or about December 14, 2022, Plaintiff/Offender Darius Tremayne Brooks (OPUS 1066328) was convicted of Manslaughter (Principal), Possession of Firearm by Felon (Principal), Possession with Intent to Sell Schedule II (Principal), Possession Schedule II (Principal), Trafficking Schedule II (Principal), Assault with Deadly Weapon

2

Inflicting Serious Injury (Principal) and sentenced to 13 years incarceration. *See* Declaration of Counsel, **Exhibit A**, attached to the Appendix as **Exhibit 1** (Plaintiff's Publicly Available NCDAC Incarceration Summary). Plaintiff was put into NCDAC custody on December 20, 2022, approximately one month prior to the alleged use of force incident. *See* **Exhibit 1** at **Ex. B** (Plaintiff's External Movements). During his current incarceration, Plaintiff has been convicted of 5 disciplinary infractions, including 3 arising from this incident: disobey orders, involvement with gang, and assault staff with weapon. *See* **Exhibit 1** at **Ex. C** (Plaintiff's Publicly Available NCDAC Infraction Summary). During his previous incarceration, Plaintiff had been convicted of 14 disciplinary infractions including, but not limited to, assault person with weapon, weapon possession, and disobey orders. *See* **Exhibit 1** at **Ex. D** (Plaintiff's Disciplinary History).

**January 22, 2023, Use of Force Incident**

*Defendants Howard, Johnson, Jones, and Pearce*

In his Amended Complaint, Plaintiff claims that while housed at Granville Correctional Institution on January 22, 2023, "Officer T. Howard used disproportionate amounts and excessive amounts of force by striking punches at me for no necessary reason." He claims that "Sgt. Jones tazed [him] twice while [he] was already complying," and further identifies "Officer Howard, Sgt. Johnson, and Austin [Pearce]" as those who

3

attacked him in the medical holding cell. [D.E. 15 at 5].

Records show that on January 22, 2023, Plaintiff and Offender Phillip Miles ("Offender Miles") refused multiple directives to exit the dining area when ordered by Sergeant Howard ("Sgt. Howard"). Both offenders refused Sgt. Howard's direct orders, approached Sgt. Howard aggressively and combatively, and after Offender Miles became so close to Sgt. Howard that his elbow came into contact with Sgt. Howard's chest, to create a safe distance between them, Sgt. Howard pushed Offender Miles. In response to this, both Plaintiff and Offender Miles began assaulting Sgt. Howard, which is shown in video footage. *See* incident report attached to **Exhibit 1** at **Ex. E**, and video footage[2] at **Ex. F**. As seen in video footage, quickly after the assault began, multiple staff members assisted in gaining control of Plaintiff and Offender Miles. *Id.* After both offenders were brought under control, per policy, they were escorted to medical and placed in separate holding cells.

After being placed in the medical holding cell, Plaintiff alleges that staff returned to his cell 10-15 minutes later and assaulted him. [D.E. 15 at 6]. In his statement provided on January 25, 2023, Plaintiff claims that this occurred 30 minutes to an hour later. *See* **Exhibit 1**-**E** at 27. However, statements obtained from multiple staff members (Officer

---

[2] Please refer to Defendants' Statement of Material Facts Not In Dispute for a detailed description of video footage beginning at ¶ 8.

Vargus, Officer Wilson, Sgt. Johnson, and Officer Pearce) indicate that Plaintiff yelled for staff to loosen his handcuffs. *Id.* at 20, 21, 22, and 24. Upon entering the holding cell to check his cuffs, Officer Pearce stated that Plaintiff jerked away and became very combative. *Id.* at 3, 24. This was witnessed by other staff members, including those not named in this suit. *Id.* at 20, 21. Plaintiff was placed on the floor by Officer Wilson and when he continued to refuse directives to comply, OC pepper spray was administered by Officer Vargus, neither of whom are named in this suit. *Id.* at 21, 20. Plaintiff was then decontaminated and evaluated by medical staff. *Id.* at 25, 28.

### *Defendant Howard*

Sergeant Howard stated that on January 22, 2023, at approximately 7:20 a.m., he directed Plaintiff and Offender Miles to get up from the table where they were sitting in the dining hall as other offenders would be coming in shortly and needed the space; however, they refused to leave. *See* Declaration of Trent Howard at ¶ 5 (hereinafter "Howard Decl.") attached to the Appendix at **Exhibit 2**.

Sgt. Howard stated that both offenders got up and began cussing at him, stating, "Fuck you and get out my face," in a hostile manner while approaching him. *Id.* at ¶ 6. Sgt. Howard reports that he gave several directives for Plaintiff and Offender Miles to back up and give him space, but they refused and proceeded to get closer to him, especially Offender Miles. *Id.* at ¶ 7. At this point, Offender Miles came close enough to

5

Sgt. Howard for his elbow to come in contact with Sgt. Howard's chest. To get space, Sgt Howard pushed Offender Miles, and the assault ensued. *Id.* at ¶ 8-9. Sgt. Howard stated that the assault happened very quickly and only lasted a few seconds. *Id.* at ¶ 10. In the moment, he was focused on protecting himself and gaining control of the offenders. He was not aware of which staff came to assist and did not give any staff members directives during the assault. *Id.* at ¶ 10-11. After the incident in the dining hall, Sgt. Howard went to operations and did not see Plaintiff again that day or in the days following. *Id.* at 14-15.

*Defendant Johnson*

Sergeant Johnson ("Sgt. Johnson") did not have any interaction with Plaintiff in the dining hall. *See* Declaration of Terrance Johnson at ¶ 8 (hereinafter "Johnson Decl.") attached to the Appendix at **Exhibit 3**. Sergeant Johnson stated that the only interaction he had with Plaintiff was in the medical building after the dining hall incident when staff attempted to check Plaintiff's restraints and to adjust them if need be. *Id.* at ¶ 9. During the dining hall incident, Sgt. Johnson assisted with restraining and escorting Offender Miles only. *Id.* at ¶ 7. *See also* **Exhibit 1-E** at 3, 22. *See also* video footage.

*Defendant Jones*

Sergeant Jones ("Sgt. Jones") was present in the dining hall, witnessed the altercation, and assisted staff in gaining control of both offenders. *See* Declaration of

6

Tencianah Jones at ¶ 4-6 (hereinafter "Jones Decl.") attached to the Appendix at **Exhibit 4**. Sgt. Jones stated that both Plaintiff and Offender Miles refused to comply with directives and were very combative and aggressive. *Id.* at ¶ 5. She administered the taser to both offenders in an attempt to gain compliance and was not directed by Sgt. Howard to do so. *Id.* at ¶ 9-10. Sgt. Jones was not involved with Plaintiff after the use of force incident in the dining hall and was not present in the medical building. *Id.* at ¶ 13-14. *See also* **Exhibit 1-E** at 2, 16. *See also* video footage.

*Defendant Pearce*

Officer Pearce was not present in the dining hall at the time of the incident and was only involved with Plaintiff in the medical building afterward. *See* Declaration of Austin Pearce at ¶ 5, 7 (hereinafter "Pearce Decl.") attached to the Appendix at **Exhibit 5**. Officer Pearce stated that Plaintiff was yelling for correctional staff to loosen his cuffs. *Id.* at ¶ 8. Officer Pearce stated that he and other staff entered the holding cell to inspect and adjust Plaintiff's cuffs, if needed, and while inspecting Plaintiff's cuffs, Plaintiff jerked a hand out of his cuffs and became combative. *Id.* at ¶ 9, 10. Other staff (Officer Wilson) placed Plaintiff on a flat surface (floor) to regain control. *Id.* at ¶ 10. *See also* **Exhibit 1-E** at 21. While on the floor, Plaintiff continued to be combative and disregarded all directives to comply. Officer Vargus administered OC pepper spray to gain control and officer Pearce grabbed Plaintiff's free hand and put it back into the handcuff. *Id.* at

7

20. *See also* Pearce Decl. at ¶ 10. No additional force was used after this. *Id.* at ¶ 11. *See also* **Exhibit 1-E** at 3, 4, 24.

**Plaintiff's Alleged Injuries**

Plaintiff alleged that while in the medical holding cell, he received "punches to the back of my head." [D.E. 15 at 6] He further alleges that Sgt. Howard and Sgt. Johnson pulled his head back by his hair and punched him in the face and additionally alleges that he was knocked unconscious. *Id.*

As shown in Plaintiff's medical records, attached to **Exhibit 1** at **Ex. G**, on January 22, 2023, Plaintiff was seen for a use of force evaluation at 8:44 a.m. *Id.* at 2. Records indicate that Plaintiff complained of pain to face/upper lip and right shoulder which had improved while waiting to be evaluated. The exam notes swelling to the upper lip with a 1-2 cm cut on inner upper lip with no active bleeding. *Id.* at 3. Swelling was also noted to his left eyelid and two taser wounds are noted to left lower abdomen. *Id.* Plaintiff was alert and oriented. It is also noted that Plaintiff was decontaminated by custody staff. *Id.* at 4. Plaintiff was additionally seen by medical staff three times later that same day for a restrictive housing screening at 12:53 p.m. and had nursing encounters at 1:55 p.m. and 2:38 p.m. *Id.* at 7, 9, and 11.

Throughout his medical records, Plaintiff made no complaints about loss of consciousness, tight handcuffs, or made any reference of wrist pain or numbness to

8

medical staff during these encounters or in the months following. *Id.* Furthermore, Plaintiff made no complaints about pepper spray in any manner. *Id*

During his evaluation on January 22, 2023, Plaintiff did complain of some injury to his right shoulder, as well as generalized bruising and tenderness. *Id.* at 2. Plaintiff was seen in follow-up by the provider on January 23, 2023, and had imaging of his right shoulder in February 2023, which was negative. *Id.* at 13-15, 21. After this, Plaintiff made no further complaints of any injury sustained during the use of force incident. *Id.* (generally).

**<u>Disciplinary Infractions</u>**

As a result of his actions on January 22, 2023, Plaintiff was charged with and found guilty of disciplinary infractions for disobey orders, involvement with gang, and assault staff with weapon. *See* Disciplinary Report attached to **Exhibit 1** at **Ex. H**. On January 25, 2023, Plaintiff provided the statement, "I was under the influence of meth and marijuana. My feelings was intense and took control of my actions." *Id.* at 23.

Plaintiff appealed the disciplinary decision, and with his appeal, he provided a 6-page written statement dated February 13, 2023. *Id.* at 3-7. In this statement, Plaintiff details his account of the use of force incident, which is largely the same allegations found in his Complaint, but he additionally admits that he was under the influence of "meth" at the time. *Id.* at 4. In his statement, Plaintiff admits that Howard ordered him to put his

9

breakfast tray up, which he admittedly refused, "because I didn't like the way he had talked to me." *Id.* at 3. Plaintiff also admits that Offender Miles was the aggressor and refused orders from Howard. *Id.* Ultimately, Plaintiff's disciplinary infractions were upheld. *See* **Exhibit 1-D**.

**<u>Relevant Grievance</u>**

Plaintiff only exhausted one grievance through Step 3 between January 1, 2022, to January 1, 2025.[3] [D.E. 40-1]. In Plaintiff's Grievance No. 3980-2023-HCBU-00068, which he submitted on March 13, 2023, he references "the use of force that Officer T. Howard applied on January 22, 2023, around 7:20 am in the chow hall…" Plaintiff further alleges, in this grievance, that he was taken "to a holding cell located in the medical building, leaving [him] in the cell with hands cuffed behind [his] back and coming back 10-15 minutes later with 3 more officers, including Sgt. Johnson, maliciously and sadistically assaulting [him] again." [*See* D.E. 40-2, at 2].

In his Amended Complaint, Plaintiff, for the first time, references Sgt. Jones administering her taser, and identifies Defendant Pearce as an additional officer present in the medical building who allegedly used excessive force. [D.E. 15 at 5].

---

[3] The Court may take judicial notice of NCDAC's official government records. *Fauconier v. Clarke*, 652 F. App'x. 217, 220 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record"); *see also* Fed. R. Evid. 201.

Courts should grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, the nonmoving party must "identify affirmative evidence

11

from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Celotex Corp.*, 477 U.S. at 324. The nonmoving party must "identify *affirmative evidence* from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El*, 523 U.S. 574, 600 (1998) (emphasis added). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Celotex Corp.*, 477 U.S. at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

**A.   DEFENDANTS DID NOT USE EXCESSIVE FORCE ON PLAINTIFF**

When an inmate brings an excessive force claim against prison officers, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. "*Whitley v. Albers*, 475 U.S. 312, 320-321 (1986). "Eighth Amendment analysis necessitates inquiry as to whether the prison officials acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered, or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

In the analysis of the subjective component, courts must determine whether the defendant showed "wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. To aid in that determination, courts should consider "(1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied." *Id.* at 321.

Further, Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve

13

internal order and discipline and to maintain institutional security." *Id.* at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322. Additionally, "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (citing *Hudson v. McMillian*, 503 U.S. at 9 (not "every malevolent touch by a prison guard gives rise to a federal cause of action"), and *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

1. <u>Plaintiff Was the Aggressor and Remaining Claims Against Officer Howard Are False</u>

As it pertains to the altercation that transpired in dining hall, Sergeant Howard pushed Offender Miles only after Miles refused multiple orders, aggressively approached him, and encroached into his personal space by making physical contact with him. Plaintiff, under his own volition, became involved in the situation, by attacking

14

Officer Howard. These offenders presented a clear threat to Sergeant Howard and the order of the facility. In a statement dated February 13, 2023, Plaintiff admits that Howard ordered him to put his breakfast tray up, which he admittedly refused, "because I didn't like the way he had talked to me." *See* **Exhibit 1-H** at 3. Plaintiff also states that Offender Miles was the aggressor and refused orders from Howard. *Id.* Additionally, Plaintiff, who admitted to being under the influence of meth, stated, "I was on meth and his actions caused me to react with 4 punches of my own." *Id.* at 4, 23.

Plaintiff then makes numerous allegations that Sergeant Howard assaulted him in the medical building [D.E. 15 at 6], however, this is simply false, as after the altercation in the dining hall, Sergeant Howard reported to the operations building and was not present in the medical building. Howard Decl. at ¶ 14-16; Johnson Decl. at ¶ 15; and Pearce Decl. at ¶ 13.

2. <u>Sergeant Jones Used Her Taser Because Plaintiff Was Attacking Sergeant Howard</u>

Sergeant Jones, in her role, is authorized, per policy, to use a conducted electrical weapon (hereinafter "taser") in the performance of her "official duties to control or deter violent, threatening or aggressive acting offenders." *See* **Exhibit 1 at Ex. I** (UOF policy). Surveillance video shows Sergeant Jones approaching at approximately 07:24:09. At this point, both offenders and Sergeant Howard are on the ground fighting, and the two female officers involved are also on the ground administering baton strikes, unable to

15

gain control of offenders. Sergeant Jones uses taser strikes on both offenders and by 07:24:18, both Plaintiff and Offender Miles are brought under control. *See* **Exhibit 1-F**.

As Plaintiff and Offender Miles did not comply with orders and were actively involved in an altercation with correctional staff, Sergeant Jones, pursuant to her training and policy, deployed her taser to control and deter aggressive acting offenders. *See* Jones Decl. at ¶ 9. The force used by Sergeant Jones was minimal and necessary to gain control, and Plaintiff's excessive force claim against Sergeant Jones should be dismissed.

*i. Plaintiff Does Not Properly Grieve Any Allegation Regarding Sergeant Jones*

Plaintiff does not mention Sergeant Jones nor any alleged action she took in his grievance and therefore cannot and did not properly grieve the allegations provided in his Amended Complaint. [D.E. 40-2]. The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's requirements of exhaustion of administrative remedies apply to all claims which arise under any federal law. Congress enacted the PLRA's requirement to benefit prison systems and inmates by allowing the prison to address complaints before being subjected to suit, thereby reducing litigation, and improving litigation that does occur by "leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

16

The Supreme Court held that the PLRA required a prisoner to exhaust all administrative remedies available as a *precondition* to filing suit in federal court even if the relief sought could not be granted by the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001) (emphasis added). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Nelson v. Campbell*, 541 U.S. 637, 650 (2004). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. It also is well-established that failure to exhaust is an affirmative defense to be pleaded and proven by defendant prison administrators or staff. *Jones*, 549 U.S. at 216; *see also Anderson v. XYZ Corr. Health Serv.*, 407 F.3d 674, 683 (4th Cir. 2005).

Thus, proper exhaustion requires Plaintiff to comply with North Carolina's three step administrative remedy program. The Fourth Circuit has recognized that the Administrative Remedy Procedure ("ARP") creates a three-step procedure which governs submission and review of inmate grievances. *Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008); *see also* N.C. Department of Public Safety, ARP policy, Subchapter G, §

17

.0300 *et seq.* (hereinafter "ARP").[4] As an inmate, Plaintiff was required to exhaust his administrative remedies with the NCDPS/NCDAC in accordance with ARP. *Id.* An inmate does not exhaust his administrative remedies until he completes all three steps of the ARP. *Id.* "Each step of the grievance review has a time limit. A grievance may be rejected at any level if there has been a time lapse of more than 90 days between the alleged event and submission of a grievance." *McElvine v. Beaver*, 2019 WL 3208376 at *3 (W.D.N.C. July 16, 2019) (citing ARP).

Plaintiff properly submitted and exhausted a grievance concerning this matter, which demonstrates his knowledge of the process and his ability to do such; however, Plaintiff does not mention Sergeant Jones in his grievance, and more importantly, does not mention the use of a taser; [D.E. 40-1 (Grievance No. 3980-2023-HCBU-00068)] therefore Sergeant Jones should be dismissed from this action on this basis, as well.

The Fourth Circuit has dismissed claims when a Plaintiff does not show that he filed a grievance as to his claim against a specific Defendant. *Wilson v. White*, 1:13-cv-322-FDW, 2014 U.S. Dist. LEXIS 9007 at *5 (W.D.N.C. Jan. 24,2014). The ARP is part of inmate orientation and is explained orally to each inmate. *See* ARP at § .0302(a)(1)[5].

---

[4] Again, this Court may take judicial notice of NCDPS's/NCDAC's policies as they are official government records. *Fauconier v. Clarke*, 652 F. App'x. 217, 220 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record"); *see also* Fed. R. Evid. 201.

[5] Available on the NCDAC website (https://public.powerdms.com/NCDAC/tree/documents/2145373).

Plaintiff did not exhaust administrative remedies as to the allegations against Sergeant Jones prior to filing this lawsuit. As such, Plaintiff falsely represented to the Court that he did exhaust, in an attempt to add allegations and defendants to his action in an attempt to get past frivolity review. [D.E. 15 ¶ 6]. As a result, and as provided by *Wilson*, Plaintiff's excessive force claim against Sergeant Jones should be dismissed for failure to exhaust administrative remedies.

3. <u>Johnson and Pearce Did Not Use Excessive Force</u>

In addition to the reasons already discussed above, Defendants Johnson and Pearce did not use excessive force and should also be dismissed. More specifically, Defendant Johnson did not even use hands on force with Plaintiff and only gave him verbal commands when he became assaultive again in medical. *See* Johnson Decl. at ¶ 11, 13. Likewise, Defendant Pearce's only interaction with Plaintiff also occurred during the use of force incident in medical. *See* Pearce Decl. at ¶ 7. There, Defendant Pearce helped place restraints on Plaintiff to regain control and compliance of him after he became assaultive towards staff. *Id.* at ¶ 10.

For all these reasons, the excessive force claims Plaintiff makes against Defendants should be dismissed because there is no genuine issue of material facts to support such claims.

19

**B. DEFENDANTS WERE NOT PERSONNALY INVOLVED AND SHOULD BE DISMISSED**

In order to proceed on a 1983 claim, "[a] plaintiff must identify the person or persons who purportedly violated his rights." *Breyan v. All Medical Staff*, 2017 WL 474397 at *2 (D.S.C. Jan. 12, 2017); *see also Parkins v. S.C.*, 2022 WL 524895 at *20 (D.S.C. Feb. 22, 2022) (held "it is not enough, especially here with over twenty defendants, to simply refer to 'these defendants' when setting for plausible allegations"); *Clinton v. Grant*, 2021 WL 1540655 at *2 (N.D. W.Va. Jan. 4, 2021) (held "in a *Bivens* case, the Plaintiff must specify the acts taken by each defendant which violates his Constitutional rights") (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir. 1988)). Other courts have held that "participation in the administrative remedy proceedings is not the type of personal involvement necessary to state a claim." *Abdel-Aziz v. Johns*, 2008 WL 4279696 at *3 (E.D.N.C. Sept. 15, 2008) (citing *Page v. Kupec*, 2003 WL 23274357 at *1 (D. Md. Mar. 31, 2003), *aff'd*, 70 Fed. Appx. 147, 2003 WL 23274357 (4th Cir. Jul. 31, 2003); *Bonds v. Fox*, 2008 WL 2543371 at *3 n. 3 (N.D. W.Va. June 23, 2008)).

With respect to Sgt. Howard, in Plaintiff's Amended Complaint, he alleges that after the use of force incident in the dining hall, "Officer Howard, Sgt. Johnson and Austin Pierce attacked me again while I was in [a] holding cell located in the main medical…Officer Howard tried to jump on me…" [D.E. 15 at 5]. Plaintiff further alleges

20

that while in the medical holding cell, "Howard continued his assault by punching me until I was unconscious. When I gained consciousness Howard was pulling my head back by my [dreads], then unloaded the rest of his mace can in my face…" *Id.* at 6.

Again, these allegations are false. After the incident in the dining hall, Sgt. Howard went to the operations building and did not see Plaintiff again that day or in the days following. *See* Howard Decl. at ¶ 14. This fact is supported by the incident report and statements therein and by the sworn statements of the Defendants who were present in the medical building. *See* **Exhibit 1-E** at 3, 20; *see also* Howard Decl. at ¶ 14-17; Johnson Decl. at ¶ 15; and Pearce Decl. at ¶ 13. Therefore, all allegations against Defendant Howard after the initial use of force incident in the dining hall should be dismissed for lack of personal involvement.

With respect to Sgt. Johnson, in Plaintiff's Amended Complaint, he alleges, "After the incident in the chow hall, Sgt. Johnson took me upstairs to a holding cell located in the medical building." Additionally, Plaintiff alleges that when "Officer Howard tried to jump on me…Sgt. Johnson told him to 'hold up, they'll get [him] later'," [D.E. 15 at 5]. This is also false. As noted in the incident report and provided in Sgt. Johnon's declaration, he was responsible for escorting Offender Miles only and did not have any interaction with Plaintiff until later when Plaintiff complained that his cuffs were too tight. Sgt. Johnson's only involvement, however, was only giving verbal commands. *See*

Johnson Decl. at ¶ 7, 10-11; *See also* **Exhibit 1-E** at 23. Additionally, the alleged statement that Sgt. Johnson made to Sgt. Howard is false, as Sgt. Howard was not present, nor did he make such statements to any other staff member. *See* Johnson Decl. at ¶ 15-16.

## C.  ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants should receive qualified immunity because Plaintiff has failed to show that Defendants violated any of his clearly established rights.  The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violated the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "[I]t is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985).  "The test for qualified immunity is a two-pronged inquiry. The court must determine, in no particular order, (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right."  *Adams v. Parsons*, 2011 WL 1464856 at *4 (S.D. W.Va. April 15, 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 200–02 (2001)).

22

As shown above, Plaintiff's constitutional rights were not violated. However, even if the Court were to now determine that Plaintiff's rights were violated, the individual rights were not clearly established such that Defendants would have reasonable notice that he was violating Plaintiff's constitutional rights. Under the circumstances faced by these Officers, it was not clearly established that they were not entitled to utilize force to gain Plaintiff's compliance following his attack on Sergeant Howard, his repeated failures to comply with Defendants' orders, and his later attempt to resist restraints and follow orders in medical. In other words, no reasonable officer under these same circumstances would think that following DAC Use of Force policy and exercising appropriate levels of force to regain control of a disruptive offender who assaulted staff and continued to be disruptive would result in a violation of the offender's rights. Therefore, Defendants should be entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

This the 5th day of August 2026.

<div style="margin-left: 50%">

**JEFF JACKSON**
**Attorney General**

/s/ James A. Barnes, IV
James A. Barnes, IV
Assistant Attorney General
N.C. State Bar No. 33356
N.C. Department of Justice
P.O. Box 629
Raleigh NC  27602-0629
Telephone: (919) 716-6786
Facsimile: (919) 716-6761
E-mail:  jabarnes@ncdoj.gov

</div>

24

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I electronically filed **DEFENDANTS'**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGMENT** with the Clerk of the Court utilizing the CM/ECF system, and I further

hereby certify that I mailed this document to the following non-CM/ECF participant, first-

class United States Mail, postage prepaid, addressed as follows:

Darius Tremayne Brooks
1066328
Alexander Correctional Institution
633 Old Landfill Rd.
Taylorsville, NC 28681
*Pro Se Plaintiff*

J. Bruce Hoof
P.O. Box 51098
Durham, NC 27717-1098
jbh@brucehooflaw.com
*Co-counsel for Defendant Johnson*

This the 5th day of August 2026.

/s/ James A. Barnes, IV
James A. Barnes, IV

25