IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:24-CT-3007-BO

| | | |
|---|---|---|
| DARIUS TREMAYNE BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **STATEMENT OF MATERIAL FACTS** |
| v. | ) | **NOT IN DISPUTE** |
| | ) | |
| CORRECTIONAL OFFICER HOWARD, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

NOW COME Defendants Howard, Johnson, Jones and Pearce (hereinafter "Defendants"), by and through Undersigned Counsel, pursuant to Local Civil Rule 56.1, to provide Defendants' Statement of Material Facts Not in Dispute.

1.  On or about December 14, 2022, Plaintiff/Offender Darius Tremayne Brooks (OPUS 1066328) was convicted of Manslaughter (Principal), Possession of Firearm by Felon (Principal), Possession with Intent to Sell Schedule II (Principal), Possession Schedule II (Principal), Trafficking Schedule II (Principal), Assault with Deadly Weapon Inflicting Serious Injury (Principal) and sentenced to 13 years incarceration. *See* Declaration of Counsel, **Exhibit A**, attached to the Appendix as **Exhibit 1**) (Plaintiff's Publicly Available NCDAC Incarceration Summary).

2. Plaintiff was readmitted into NCDAC custody on December 20, 2022, approximately one month prior to the alleged use of force incident. *See* **Exhibit 1** at **Ex. B** (Plaintiff's External Movements).

3. During his current incarceration, Plaintiff has been convicted of 3 disciplinary infractions, all arising from this incident, including disobey orders, involvement with gang, and assault staff with weapon. *See* **Exhibit 1** at **Ex. C** (Plaintiff's Publicly Available NCDAC Infraction Summary).

4. During his previous incarceration, Plaintiff had been convicted of 14 disciplinary infractions including, but not limited to, assault person with weapon, weapon possession, and disobey orders. *See* **Exhibit 1** at **Ex. D** (Plaintiff's Disciplinary History).

**January 22, 2023, Use of Force Incident**

5. Records show that on January 22, 2023, Plaintiff and Offender Phillip Miles ("Offender Miles") refused multiple directives to exit the dining area when ordered by Sergeant Howard ("Sgt. Howard"). Both offenders refused Sgt. Howard's direct orders, approached Sgt. Howard aggressively and combatively, and after Offender Miles became so close to Sgt. Howard that his elbow came into contact with Sgt. Howard's chest, to create a safe distance between them, Sgt. Howard pushed Offender Miles. In

response to this, both Plaintiff and Offender Miles began assaulting Sgt. Howard, which is shown in video footage. *See* **Exhibit 1** at **Ex. E** (incident report), and **Ex. F** (video footage).

6.  Plaintiff was escorted to medical, per policy, by Officer Kingsberry. *See* **Exhibit 1**-**E** at 2 and video footage at **Exhibit 1-F**.

7.  After being placed in the medical holding cell, Plaintiff alleges that staff returned to his cell 10-15 minutes later and assaulted him. [D.E. 15 at 6]. In his statement provided on January 25, 2023, Plaintiff claims that this occurred 30 minutes to an hour later. *See* **Exhibit 1**-**E** at 27. However, statements obtained from multiple staff members (Officer Vargus, Officer Wilson, Sgt. Johnson, and Officer Pearce) indicate that Plaintiff yelled for staff to loosen his handcuffs. *Id.* at 20, 21, 22, and 24. Upon entering the holding cell to check his cuffs, Officer Pearce stated that Plaintiff jerked away and became very combative. *Id.* at 3, 24. This was witnessed by other staff members, including those not named in this suit. *Id.* at 20, 21. Plaintiff was placed on the floor by Officer Wilson and when he continued to refuse directives to comply, OC pepper spray was administered by Officer Vargus, neither of whom are named in this suit. *Id.* at 21, 20. Plaintiff was then decontaminated and evaluated by medical staff. *Id.* at 25, 28.

3

**Video Footage "C16 Dining Hall"**

8. Video footage shows Sgt. Howard calmly approaching Plaintiff and Offender Miles at 07:23:20. Both offenders continue sitting until Plaintiff stands at 07:23:44. Offender Miles looks over his shoulder at Sgt. Howard and at 07:23:50, stands and approaches Sgt. Howard. From here, both Plaintiff and Offender Miles can be seen speaking to Sgt. Howard approach him in an aggressive manner. At 07:23:56, Offender Miles elbow is seen coming in contact with Sgt. Howard's chest. After this, Sgt. Howard pushes Offender Miles away from him, and both Plaintiff and Offender Miles begin assaulting Sgt. Howard. *See* video footage attached to **Exhibit 1-F**.

9. Video footage shows multiple staff members assisted in gaining control of Plaintiff and Offender Miles. Two female officers (Kingsberry and Ahemn) were standing by and are immediately seen coming to assist (neither are named in this suit). Officer Kingsberry is seen calling in the code and both Officers Kingsberry and Ahemn are seen administering strikes to both offenders with their batons and both officers falling to the ground during the incident. *Id.*

10. Video footage shows Sergeant Jones approaching at approximately 07:24:09. She uses taser strikes on both offenders and by 07:24:18, both Plaintiff and Offender Miles are brought under control. *Id.*

4

11. Video footage shows Officer Kingsberry applying restraints to Plaintiff and calmly escorting him out of the dining hall. Sgt. Jones is seen applying restraints to Offender Miles, who becomes combative again and is assisted by additional staff during escort to medical. *Id.*

**Video Footage "C14 Breezeway" and "C56 Breezeway"**

12. Video footage "C14 Breezeway" shows Plaintiff being calmly escorted out of the dining hall by Officer Kingsberry at 07:25:09. *Id.*

13. Video footage "C56 Breezeway' shows Plaintiff continuing his escort toward medical at 07:25:45, still escorted by Officer Kingsberry and joined by Officer Vargus (neither are named in this suit). *Id.*

**Video Footage "C64 Medical"**

14. Video footage "C64 Medical" shows Plaintiff arriving in medical at 07:26:09. Once in the holding cell, Officer Kingsberry holds the door while Officer Vargus is seen briefly entering and then exiting the holding cell to assist with Offender Miles. Shortly after this, Offender Miles can be seen with full escort as he remained non-compliant after the dining hall incident. *Id.*

15. Video footage "C64 Medical" shows Sergeant Johnson and Officer Pearce escorting Offender Miles with Officers Wilson and Officer Vargus (neither are named in this

suit). After placing Offender Miles in a holding cell, Sgt. Johnson and Officers Pearce, Wilson, and Vargus can be seen at 07:28:00 opening the holding cell door of Plaintiff but do not enter. At 07:28:18, Officer Vargus is seen entering Offender Miles holding cell and exits nearly immediately at 07:28:23. *Id.*

**Investigation – Incident Report #3980-23-25**

16. The January 22, 2023, use of force incident (hereinafter "dining hall incident") was thoroughly investigated and regional director approved. *See* **Exhibit 1**-**E**.

17. It was determined that minimal and necessary force was used to stop Plaintiff and Offender Miles' assaultive behavior and to bring the incident under control. Force used included hands-on, baton, taser and OC pepper spray. *Id.* at 9-10.

18. Statements were obtained from multiple members of correctional and medical staff, including named defendants. *Id.* at 12-22.

**Statements of Defendants**

*Defendant Howard*

19. Sergeant Howard stated that on January 22, 2023, he directed Plaintiff and Offender Miles to get up from the table where they were sitting in the dining hall as other offenders would be coming in shortly and needed the space; however, they refused

to leave. *See* Declaration of Trent Howard at ¶ 5 (hereinafter "Howard Decl.") attached to the Appendix at **Exhibit 2**. This is seen on video footage.

20. Sgt. Howard stated that both offenders got up and began cussing at him, stating, "Fuck you and get out my face," in a hostile manner while approaching him. *Id.* at ¶ 6.

21. Sgt. Howard reports that he gave several directives for Plaintiff and Offender Miles to back up and give him space, but they refused and proceeded to get closer to him, especially Offender Miles. *Id.* at ¶ 7.

22. At this point, Offender Miles came close enough to Sgt. Howard for his elbow to came in contact with Sgt. Howard's chest, and the assault ensued. *Id.* at ¶ 8-9.

23. Sgt. Howard stated that the assault happened very quickly and only lasted a few seconds. *Id.* at ¶ 10.

24. In the moment, Sgt. Howard was focused on protecting himself and gaining control of the offenders. He was not aware of which staff came to assist and did not give any staff members directives during the assault. *Id.* at ¶ 10-11.

25. After the incident in the dining hall, Sgt. Howard went to operations and did not see Plaintiff again that day or in the days following. *Id.* at 14-15.

*Defendant Johnson*

26. Sergeant Johnson ("Sgt. Johnson") did not have any interaction with Plaintiff in the dining hall or during escort to medical. *See* Declaration of Terrance Johnson (hereinafter "Johnson Decl.") attached to the Appendix at **Exhibit 3**. This is seen on video footage.

27. Sergeant Johnson ("Sgt. Johnson") did not have any interaction with Plaintiff in the dining hall. *See* Declaration of Terrance Johnson at ¶ 8 (hereinafter "Johnson Decl.") attached to the Appendix at **Exhibit 3**.

28. Sergeant Johnson stated that the only interaction he had with Plaintiff was in the medical building after the dining hall incident when staff attempted to check Plaintiff's restraints and to adjust them if need be. *Id.* at ¶ 9.

29. During the dining hall incident, Sgt. Johnson assisted with restraining and escorting Offender Miles only. *Id.* at ¶ 7. *See also* **Exhibit 1-E** at 3, 22. This is seen on video footage.

*Defendant Jones*

30. Sergeant Jones ("Sgt. Jones") assisted by administering her taser to both Plaintiff and Offender Miles in an attempt to gain compliance. *See* Declaration of Tencianah Jones

at ¶ 4-6 (hereinafter "Jones Decl.") attached to the Appendix at **Exhibit 4**. This is seen on video footage.

31. Sgt. Jones stated that both Plaintiff and Offender Miles refused to comply with directives and were very combative and aggressive. *Id.* at ¶ 5.

32. Sgt. Jones administered the taser to both offenders in an attempt to gain compliance and was not directed by Sgt. Howard to do so. *Id.* at ¶ 9-10.

33. Sgt. Jones was not involved with Plaintiff after the use of force incident in the dining hall and was not present in the medical building. *Id.* at ¶ 13-14. *See also* **Exhibit 1**-**E** at 2, 16.

*Defendant Pearce*

34. Officer Pearce was not present in the dining hall at the time of the incident and was only involved with Plaintiff in the medical building afterward. *See* Declaration of Austin Pearce at ¶ 5, 7 (hereinafter "Pearce Decl.") attached to the Appendix at **Exhibit 5**.

35. Officer Pearce stated that Plaintiff was yelling for correctional staff to loosen his cuffs. *Id.* at ¶ 8.

9

36. Officer Pearce stated that he and other staff entered the holding cell to inspect and adjust Plaintiff's cuffs, if needed, and while inspecting Plaintiff's cuffs, Plaintiff jerked a hand out of his cuffs and became combative. *Id.* at ¶ 9, 10.

37. Other staff (Officer Wilson) placed Plaintiff on a flat surface (floor) to regain control. *Id.* at ¶ 10. *See also* **Exhibit 1-E** at 21.

38. While on the floor, Plaintiff continued to be combative and disregarded all directives to comply. Officer Vargus administered OC pepper spray to gain control and officer Pearce grabbed Plaintiff's free hand and put it back into the handcuff. *Id.* at 20. *See also* Pearce Decl. at ¶ 10. No additional force was used after this. *Id.* at ¶ 11. *See also* **Exhibit 1-E** at 3, 4, 24.

**<u>Plaintiff's Alleged Injuries</u>**

39. Plaintiff alleged that while in the medical holding cell, he received "punches to the back of my head." [D.E. 15 at 6]. He further alleges that Sgt. Howard and Sgt. Johnson pulled his head back by his hair and punched him in the face and additionally alleges that he was knocked unconscious. *Id.*

40. As shown in Plaintiff's medical records, attached to **Exhibit 1** at **Ex. G**, on January 22, 2023, Plaintiff was seen for a use of force evaluation at 8:44 a.m. *Id.* at 2. Records indicate that Plaintiff complained of pain to face/upper lip and right shoulder pain

10

that had improved while waiting to be evaluated. The exam notes swelling to the upper lip with a 1-2 cm cut on inner upper lip with no active bleeding. *Id.* at 3. Swelling was also noted to his left eyelid and two taser wounds are noted to left lower abdomen. *Id.* Plaintiff was alert and oriented. It is also noted that Plaintiff was decontaminated by custody staff. *Id.* at 4.

41. Plaintiff was additionally seen by medical staff three times later that same day for a restrictive housing screening at 12:53 p.m. and had nursing encounters at 1:55 p.m. and 2:38 p.m. *Id.* at 7, 9, 11.

42. Throughout his medical records, Plaintiff did not make any complaints about loss of consciousness, tight handcuffs or make any reference of wrist pain or numbness to medical staff during these encounters or in the months following. *Id.* Furthermore, Plaintiff made no complaints about pepper spray in any manner. *Id*

43. During his evaluation on January 22, 2023, Plaintiff did complain of some injury to his right shoulder as well as generalized bruising and tenderness. *Id.* at 2.

44. Plaintiff was seen in follow-up by the provider on January 23, 2023. (*Id.* at 13-15) and had imaging of his right shoulder in February 2023, which was negative. *Id.* at 21. After this, Plaintiff made no further complaints of any injury sustained during the use of force incident. *Id.* (generally).

**Disciplinary Infractions**

45. As a result of his actions on January 22, 2023, Plaintiff was charged with and found guilty of disciplinary infractions for disobey orders, involvement with gang, and assault staff with weapon. *See* Disciplinary Report attached to **Exhibit 1** at **Ex. H**.

46. On January 25, 2023, Plaintiff provided the statement, "I was under the influence of meth and marijuana. My feelings was intense and took control of my actions." *Id.* at 23.

47. Plaintiff appealed the disciplinary decision, and with his appeal, he provided a 6-page written statement dated February 13, 2023. *Id.* at 3-7. In this statement, Plaintiff details his account of the use of force incident, which is largely the same allegations found in his Complaint, but he additionally admits that he under the influence of "meth" at the time. *Id.* at 4.

48. In his statement, Plaintiff admits that Howard ordered him to put his breakfast tray up, which he admittedly refused, "because I didn't like the way he had talked to me." Plaintiff also states that Offender Miles was the aggressor and refused orders from Howard. *Id.* at 3

49. Ultimately, Plaintiff's disciplinary infractions were upheld. *See* **Exhibit 1-D**.

**Relevant Grievance**

50. Plaintiff only exhausted one grievance through Step 3 between January 1, 2022, to January 1, 2025.[1] [D.E. 40-1].

51. In Plaintiff's Grievance No. 3980-2023-HCBU-00068, which he submitted on March 13, 2023, he references "the use of force that Officer T. Howard applied on January 22, 2023, around 7:20 am in the chow hall…" Plaintiff further alleges, in this grievance, that he was taken "to a holding cell located in the medical building, leaving [him] in the cell with hands cuffed behind [his] back and coming back 10-15 minutes later with 3 more officers, including Sgt. Johnson, maliciously and sadistically assaulting [him] again." [*See* D.E. 40-2, at 2].

52. In his Amended Complaint, Plaintiff, for the first time, references Sgt. Jones administering her taser, and identifies Defendant Pearce as an additional officer present in the medical building who allegedly used excessive force. [D.E. 15 at 5].

---

[1] The Court may take judicial notice of NCDAC's official government records. *Fauconier v. Clarke*, 652 F. App'x. 217, 220 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record"); *see also* Fed. R. Evid. 201.

13

This the 5th day of August 2026.

<div style="margin-left:50%">

**JEFF JACKSON**
**Attorney General**

/s/ James A. Barnes, IV
James A. Barnes, IV
Assistant Attorney General
N.C. State Bar No. 33356
N.C. Department of Justice
P.O. Box 629
Raleigh NC  27602-0629
Telephone: (919) 716-6786
Facsimile: (919) 716-6761
E-mail:  jabarnes@ncdoj.gov

</div>

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this day, I electronically filed the **Statement of Material Facts Not in Dispute** with the Clerk of the Court utilizing the CM/ECF system, and I further hereby certify that I mailed this document to the following non-CM/ECF participant, first-class United States Mail, postage prepaid, addressed as follows:

>Darius Tremayne Brooks
>1066328
>Alexander Correctional Institution
>633 Old Landfill Rd.
>Taylorsville, NC 28681
>*Pro Se Plaintiff*
>
>J. Bruce Hoof
>P.O. Box 51098
>Durham, NC 27717-1098
>jbh@brucehooflaw.com
>*Co-counsel for Defendant Johnson*

This the 5th day of August 2026.

<div align="right">

/s/ James A. Barnes, IV
James A. Barnes, IV

</div>