**EXHIBIT 1-H**     **Page 1 of 16**



**State of North Carolina**
**Department of Public Safety**
**Prisons**

| | |
|---|---|
| Chapter: | F |
| Section: | .1500 |
| Title: | **Use of Force** |
| Issue Date: | 08/30/18 |
| Supersedes: | 03/26/18 |
| Review Date: | 09/03/20 |

*POLICY AND PROCEDURE*

## .1501 PURPOSE

The purpose of this policy is to provide Prisons' personnel direction in the use of non-deadly and deadly force, documentation requirements, and reporting procedures for use of force incidents.

## .1502 DEFINITIONS

(a)  Escapee -- any individual who leaves or is attempting to leave the custody of Prisons without prior authorization.

(b)  Deadly (lethal) force -- any use of force that would reasonably tend to result in death or serious bodily injury.

(c)  Non-Deadly (less than lethal) force -- any use of force that is not likely to result in death or serious bodily injury.

(d)  Hands on physical force -- any degree of physical force exerted by a staff member using bodily strength including approved unarmed self-defense techniques.

(e)  Pepper spray -- aerosol spray based on the active natural ingredient oleoresin capsicum, a derivative of various species of cayenne pepper.

(f)  Chemical Mace -- aerosol spray based on the active chemical ingredient orthochlorobenzalmalonoitrile commonly referred to as CS.

(g)  Conducted Electronic Weapon (CEW) -- A CEW is a less-lethal device that uses electrical current, with the goal of achieving neuromuscular incapacitation, by the disruption of voluntary control of the muscles.

(h)  Deploy -- means to fire a CEW cartridge sending the probes downrange.

(i)  Drive Stun -- means to activate the CEW while holding it against the target, such that the CEW probes make contact with the target.

(j)  Individual control devices -- include the specific expandable baton and rigid baton as designated in the Standard Equipment list.

Case 5:24-ct-03007-BO    Document 66-9    Filed 08/05/26    Page 1 of 16

EXHIBIT 1-H                    Page 2 of 16

(k)    Mechanical restraints -- include handcuffs, waist chains, leg cuffs, handcuff covers "black box", pad locks, and flex cuffs.

(l)    Tear gas refers to the formula orthochlorobenzalmalonoitrile, commonly referred to as CS, contained in various dispersion instruments including grenades, projectile, and canisters. Normally used to disperse multiple subjects or in crowd control applications.

(m)   Probable cause -- reasonable grounds to believe that an offense has been (or is being) committed and that a specific person committed it.

(n)    Breach of the peace -- a fight, disturbance, shouting, riot or the like.

(o)    Chemical Munition – a less than lethal hand thrown grenade, or a less than lethal munitions fired from either a designated 12 gauge shotgun or 37mm grenade launcher that contains either OC (Oleoresin Capsicum) or CS (orthochlorobenzalmalonoitrile). A chemical munitions is utilized to subdue hostile offenders or quell disturbances by the use of chemical agents with minimal threat of injury.

(p)    Specialty Impact Munitions – a less than lethal hand thrown grenade, or a less than lethal munitions fired from either a designated 12 gauge shotgun or 37 mm grenade launcher that contains foam, rubber or wood batons or rubber pellets. The special impact munitions are designed to utilize impact to cause discomfort to bring hostile and/or disruptive offenders under control.

(q)    Facility Chemical Officers – Correctional sergeants or above who have completed the six hour "Duty Chemical Agents and Specialty Impact Munitions" lesson plan.

## .1503 POLICY

The following general guidelines apply to the use of force in Prisons.

(a)    The use of force shall be permissible only to the extent reasonably necessary for a proper correctional objective. This prohibition shall not be construed to mean that staff must suffer an assault upon their person before taking appropriate defensive action or that the use of force by another must be met with strictly equal force on the part of the staff.

(b)    An officer is authorized to use whatever degree of force that reasonably appears to be necessary to defend the officer or a third party from imminent assault. Reasonable force is authorized in order to prevent an escape or to ensure compliance with a lawful order or to protect property or to return an escapee to custody. When time and circumstances permit, a sergeant or supervisor of higher rank should be present to supervise anticipated use of force or situations likely to result in use of force. An officer should attempt non-forcible

**EXHIBIT 1-H**       **Page 3 of 16**

methods of offender control, but only to the extent reasonably possible under the circumstances as they appear to that officer.

(c)     An officer may lawfully utilize deadly force to:

     (1)     prevent the escape of a convicted felon,

     (2)     prevent or stop a life threatening assault on themselves or another person, or

     (3)     prevent escape of a pre-trial detainee awaiting felony charges.

     (4)     Deadly force may not be used solely to protect property or ensure compliance with a lawful order that does not implicate personal safety.

(d)     An officer is prohibited from using force solely as a result of verbal provocation. An officer shall not use force against an offender who has abandoned his/her resistance or who is effectively restrained. The use of force as punishment is strictly prohibited.

(e)     When employing any degree of force, the officer shall use reasonable care to ensure that uninvolved persons are not endangered by such use of force.

(f)     Each facility will designate the posts approved to be routinely issued batons and CEWs.

(g)     The expandable and rigid batons are the only impact tools authorized for duty use by Prisons personnel.

(h)     Prisons will maintain a policy and procedure governing the availability, control, and use of chemical agents, and related security devices and specifying the level of authority required for their access and use. Chemical agents are authorized only used with the authorization of the facility head or designee.

(i)     Firearms will be limited to those approved by the Director of Prisons. Use of a personal firearm is expressly prohibited. All firearms utilized must be the property of Prisons.

(j)     If an offender complains of a use of force and the use of force was not reported, the Officer-In-Charge will investigate. The investigation should begin with a face to face medical examination as soon as possible. If the Officer-In-Charge determines that a use of force should have been reported and the standard Incident Report completed, the responsible officer will be subject to disciplinary action.

(k)     Escapes.

Case 5:24-ct-03007-BO    Document 66-9    Filed 08/05/26    Page 3 of 16

**EXHIBIT 1-H**          **Page 4 of 16**

(1)     Deadly force is not authorized against a misdemeanor escapee, a pretrial detainee awaiting misdemeanor charges or in the apprehension of these persons except where there is an imminent threat of death or serious bodily injury presented.

(2)     Deadly force is authorized against a felon escapee or a pretrial detainee awaiting felony charges.

## .1504 PROCEDURES

Procedures for the use of force restrict the use of force to instances of justifiable self-defense, protection of others, protection of state property, prevention of escapes, and to maintain or regain control, and then only as a last resort and in accordance with appropriate statutory authority. In no event is physical force justifiable as punishment. A written report is to be prepared following all uses of force and is submitted to administrative staff for review. Staff shall be instructed to use only the amount of force that is reasonably necessary to accomplish the underlying correctional objective. Efforts to control a situation through communication should be attempted, if feasible, prior to any use of force. Pepper spray or other techniques that reduce the risk of injury to staff and offenders should be used as the first response to an aggressive offender, if feasible under the circumstances.

Prisons policy and procedure will govern the availability, control and use of chemical agents, and related security devices and specify the level of authority for their access and use. Chemical agents are used only with the authorization of the facility head or his designee.

(a)     Hands-on Physical Force, including approved CRDT (Control, Restraints, Defensive Techniques), self-defense techniques, may be used:

   (1)     To restrain or move a non-aggressive, non-compliant offender; or

   (2)     To subdue an aggressive offender when pepper spray is not effective or is not feasible; or

   (3)     To prevent an escape, to protect property, to defend the officer or a third party from imminent assault, to ensure compliance with a lawful order or to return an escapee to custody.

(b)     Pepper Spray, if feasible, should be used as the first level of response:

   (1)     To control or deter violent, threatening or aggressive acting offenders; or

   (2)     To defend the officer or a third party from imminent assault.

   (3)     Pepper spray is to be sprayed directly in the eyes.

**EXHIBIT 1-H**                     **Page 5 of 16**

(4)    An offender subject to pepper spray will be given an immediate opportunity to flush his or her eyes with water once control has been restored. An offender's refusal to flush his/her eyes shall be documented in the Incident Report.

(c)    Conducted Electrical Weapon (CEW):

    (1)    CEWs are authorized for use by trained officers in the performance of their official duties to control or deter violent, threatening or aggressive acting offenders; or to defend officers or third parties from an imminent assault. A CEW may be deployed against an offender; a CEW may be operated in drive stun mode when deployment is not feasible.

    (2)    Use of a CEW by an officer shall be in compliance and consistent with the most current training guidelines.

    (3)    Officers shall not display a CEW when force is not otherwise authorized.

    (4)    Officers shall receive the required training prior to being authorized to use a CEW.

    (5)    The CEW shall not be used on any subject who is clinically diagnosed as pregnant.

    (6)    Officers will give verbal warnings, when feasible, to warn the target, and all surrounding persons, of the impending CEW deployment.

(d)    Chemical Mace (to be used only by trained PERT or SORT staff)

    (1)    Chemical Mace may be used to the extent necessary to control or deter violent or aggressive acting offenders.

    (2)    An officer should attempt to avoid discharging mace into direct contact with an offender's face.

    (3)    An offender subjected to mace should be moved to a ventilated area and should be afforded an opportunity to shower and change clothes once control has been restored. An offender's refusal of the opportunity to shower and change clothes shall be documented in the Incident Report.

    (4)    Chemical Mace may only be used with authorization of facility head or Officer In-Charge of the facility.

**EXHIBIT 1-H**                    **Page 6 of 16**

(e)     Chemical Munitions (OC versions to be used by trained Facility Chemical Officers, PERT or SORT staff,) (CS versions to be used only by trained PERT or SORT staff)

    (1)     Chemical Munitions may be used to the extent necessary to control or deter violent or aggressive acting offenders.

    (2)     The trained chemical officers should evaluate each situation or disturbance and utilize the appropriate chemical munitions for each disturbance.

    (3)     An offender subjected to chemical munitions should be moved to a ventilated area and should be afforded an opportunity to shower and change clothes once control has been restored. An offender's refusal of the opportunity to shower and change clothes shall be documented in the Incident Report.

    (4)     Chemical Munitions may only be used with authorization of facility head or Officer-In-Charge of the facility.

(f)     Specialty Impact Munitions (to be used by trained Facility Chemical Officers, PERT or SORT staff)

    (1)     Chemical Impact Munitions may be used to the extent necessary to control or deter violent or aggressive acting offenders.

    (2)     The trained officer should evaluate each situation or disturbance and utilize the appropriate specialty impact munitions for each disturbance.

    (3)     Trained officers should attempt to avoid directing specialty impact munitions into direct contact with an offender's face.

    (4)     An offender subjected to specialty impact munitions should be moved to a holding area and should be afforded an opportunity to have any impact areas of his/her body checked by medical personnel. An offender's refusal of the treatment shall be documented in the Incident Report.

    (5)     Specialty Impact Munitions may only be used with authorization of facility head or Officer-In-Charge of the facility.

(g)     Individual Control Devices (Expandable Baton, Rigid Baton)

    (1)     Individual control devices may be used to control violent or aggressive offenders.

Case 5:24-ct-03007-BO     Document 66-9     Filed 08/05/26     Page 6 of 16

**EXHIBIT 1-H**                    **Page 7 of 16**

(2)    Intentional powered overhead strikes with a baton to vital areas are prohibited unless reasonably necessary to defend oneself or others from imminent threat of death or serious bodily injury. Vital areas include the head, throat, neck, solar plexus, spine, kidneys, groin, or coccyx. However, in extreme circumstances, staff members are expected to use any means available to protect themselves from assault and injury.

(h)    Pregnant Offenders:

(1)    An offender with a clinical diagnosis of pregnancy shall not be restrained by leg, waist, or ankle restraints. Wrist restraints may be used during any internal escort or external transport. These wrist restraints shall only be applied in the front and in such a way that the pregnant offender may be able to protect herself and the fetus in the event of a fall. This related to inmates not in labor or suspected labor and who are escorted out for Ultrasound Addiction Therapy for Pregnant Women or other routine services. The Associate Warden for Custody will be notified anytime an offender is transported externally for delivery.

(2)    The following offenders should not be placed in any restraints, including wrist restraints, unless there are reasonable grounds to believe the offender presents an immediate, serious threat of hurting herself, staff, or others, including her fetus or child, or that she presents an immediate, credible risk of escape that cannot be reasonably contained through other methods:

  (A) An offender who is in labor, which is defined as occurring at the onset of contractions;
  (B) An offender who is delivering her baby;
  (C) An offender who is identified by medical staff as in post-partum recuperation;
  (D) An offender who is transported or housed in an outside medical facility for treating labor and delivery;
  (E) An offender for induction once the intravenous line has been placed and the induction medication has been started;
  (F) An offender who is being transported from the holding room to the Operating Room for C-section; or
  (G) An offender during initial bonding with the newborn child, including nursing and skin to skin contact. If restraints are required, they should allow for the mother's safe handling of her infant.

(3)    When the use of restraints during labor occurs, officers must immediately notify the Associate Warden for Custody of the reasons why restraints were applied and an incident report must be completed.

**EXHIBIT 1-H**                    **Page 8 of 16**

(4)     Upon medical discharge, wrist restraints shall be applied for transport back to the correctional facility. Leg restraints may be applied when there are reasonable grounds to believe the offender presents an immediate, serious threat of hurting herself, staff, or others, or that she presents an immediate, credible risk of escape that cannot be reasonably contained through other methods.

(5)     Waist restraints shall not be used at any time during pregnancy or post-delivery, to include transport back to the facility.

(i)     Restraints for Behavioral Management

(1)     Four-point restraints may be used to control violent or unmanageable offenders who have demonstrated behavior that presents a significant risk of injury to self or others. Four-point restraints will not be used as punishment.

Interim steps such as handcuffs, waist chains, and leg cuffs may be used to attempt to control the offender before four point restraints are used. This may include the offender being placed in a cell in full restraints (but not secured to the bunk). If this method is used, it must be approved by the facility heard or his /her designee and the following procedures will be followed:

(A)     Staff will make rounds to visually observe the offender at least every 15 minutes

(B)     After every two hours, the offender will be given the opportunity to use the toilet and exercise his extremities. Partial or full release from restraints, depending on behavior, will occur at the two-hour point and at mealtimes.

(C)     Offenders will not be continued in this status after forty-eight (48) hours have elapsed. At this point, if appropriate behavior is not exhibited, the **OIC** should contact the facility head or designee and begin [procedures for placement in four/five point restraints as specified in the next paragraph.

When an offender is placed in four/five point restraint (arms, head and legs secured), advance approval must be obtained from the facility head or designee. Subsequently, the health authority or designee must be notified to assess the offender's medical and mental health condition, and to advise whether, on the basis of serious danger to self or others, the offender should be placed in a medical/mental health unit for emergency involuntary treatment with sedation and/or other medical management, as appropriate. If the offender is not transferred to a medical/mental health unit and is restrained in a four/five point position, the following minimum procedures will be followed:

       (A)     Direct visual observation by staff must be continuous prior to obtaining approval from the health authority or designee;

       (B)     Subsequent visual observation must be made at least every fifteen minutes; and,

       (C)     Restraint procedures are in accordance with guidelines endorsed by the designated health authority.

(2)     Soft restraints must be used to restrain the offender unless:

       (A)     Such restraints have proven ineffective with respect to that offender, or

       (B)     Such restraints are proven ineffective during the initial application.

(3)     When using the four-point restraint method, the offender will be face up on the bed. Hands should be secured by the side, no higher than the person's sternum.

(4)     Medical and mental health staff must be advised when an offender is placed in four/five point restraints. A nurse or other qualified medical staff member must physically examine the offender as soon as possible after restraints have been applied to check on the offender's health condition. Medical staff must physically check on the offender's health condition at least once every four (4) hours to ensure the well-being of the offender.

(5)     Correctional staff will check the offender at fifteen (15) minute intervals or more frequently as directed by a qualified health professional, both to ensure that the restraints are not hampering circulation and for the general welfare of the offender.

(6)     A review of the offender's placement in four point restraints will be made by the OIC every two hours to determine if the restraints have had the calming effect and so that the offender may be released from the restraints (completely or lesser restraints) as soon as possible. The OIC must visually observe the offender to make this decision. The offender will be released at the earliest possible time that the offender, in the opinion of the OIC, no longer exhibits behavior that necessitates restraint. While the facility head or designee must approve placement of an offender in four point restraints, the OIC has the authority to remove the restraints.

(7)     At every two hour review, the offender will be afforded the opportunity to use the toilet and to exercise his extremities, unless the offender is continuing to actively resist or becomes violent while released from the restraints for this purpose. Partial or complete

**EXHIBIT 1-H**　　　　　　**Page 10　of 16**

release from restraints at mealtime is also required unless the offender is continuing to actively resist or becomes violent when released from restraints for this purpose.

(8)　The Region Director or designee and the Division Duty Officer are notified if an offender is maintained in four point restraints for more than eight (8) hours.

(9)　Only facilities with 24 hour medical staffing and single-cells may place an offender in four point restraints. Restraint beyond 48 hours requires the approval of the Region Director or designee. Offenders continued in four point restraints beyond 48 hours will be transferred to Central Prison or NCCIW for housing and continuation of the procedure.

(10)　The use of therapeutic restraints as part of mental health treatment is outlined in the Health Care Procedures Manual.

(11)　This incident will be documented on the standard OPUS Incident Report. All custody checks on the offender will be documented on the DC-141. Checks by medical staff will be documented in the offender's medical records.

(j)　Restraints and Escorting Restrained Offenders

All offenders will have their hands restrained behind their back before being removed from their cell.　The use of instruments of restraint, such as handcuffs, leg cuffs, waist chains, black boxes and soft restraints are used only with approval by the facility head or designee.

(1)　Instruments of restraint will be utilized only as a precaution against escape during transfer, prevent self-injury or injury to officers or third parties, and/or for medical or mental health reasons.

(2)　Offenders will be escorted with their hands restrained behind their back. Exceptions to this practice may be made for individual offenders by the facility head or his / her designee after thorough consultation with medical staff. As outlined in the Conditions of Confinement policy section, .1217 "Use of Restraint-Internal Movement/Control", additional restraints will be applied for control status offenders. Escorting staff will take care to protect the offender from falling or assault by other offenders, as well as protecting themselves and others from assaultive behavior by the offender. It is recommended that at least one certified officer escort a restrictive housing offender. When escorting a restrained offender up or down stairs or over uneven ground, the officer will control and guide the offender by placing his/her hand on the offender's upper arm and maintaining this form of control while the offender is escorted. This form of hands-on physical contact is not considered a use of force when carried out in escorting situations.

Case 5:24-ct-03007-BO　　Document 66-9　　Filed 08/05/26　　Page 10 of 16

**EXHIBIT 1-H** **Page 11 of 16**

(k)     Tear Gas  (to be used only by trained PERT or SORT staff)

Tear gas canisters and other tear gas weapons designed for crowd control will be used only if an exit is available to a ventilated area or can be made available to a ventilated area for the offenders following the return of control.

(1)     Affected offenders will be given the opportunity to shower and receive clean clothes once control has been established.

(2)     Only the facility head or Officer-In-Charge of the correctional facility may authorize the use of tear gas.

(l)     Firearms

The following policy governs the use of firearms, including the following:

(1)     Weapons are subject to stringent safety regulations and inspections.

(2)     Except in emergency situations, employees carrying firearms are assigned only to towers, gun walks, mobile patrols, transportation, outside hospital duty, and other positions that are inaccessible to offenders.

(3)     Employees supervising offenders outside the institution's perimeter follow specific procedures for ensuring the security of the weapons.

(4)     Employees are instructed to use deadly force only after other actions have been tried and found ineffective, unless the employee believes that a person's life is immediately threatened.

The use of firearms is authorized in the deadly force situations described in this section.

(1)     A felon offender who attempts to go over, under or through the interior perimeter fence or other perimeter barrier is subject to being fired upon to prevent escape.

(2)     In all situations involving the use of firearms, an officer's decision to fire is guided by consideration of physical characteristics and structures near the line of fire and safety concerns for the public, staff or other offenders who may be in the line of fire, taking into consideration the type of weapon used, the surrounding population and similar matters.

(3)     In an emergency the Incident Commander may authorize the use of firearms to assure compliance with a lawful order when failure to comply jeopardizes the safety of the public, staff, or other offenders to the extent that serious injury or

**EXHIBIT 1-H**                    **Page 12 of 16**

death is likely to occur. No firearms of any description shall be allowed at any time in a correctional facility except as directed by the Emergency Response Commander.

(4)     No firearm is to be left unattended or unsecured at any time or in any place accessible to the public or offenders, either directly or indirectly.

(5)     An officer should avoid firing warning shots but when good judgment dictates their use, care shall be taken to not injure other persons or property.

(m)     Authority to Detain

(1)     Prisons staff may detain another person when the staff member has probable cause to believe that the individual to be detained has committed in his or her presence any of the following:

(A)     A felony

(B)     A breach of the peace

(C)     A crime involving physical injury to another person

(D)     A crime involving theft or destruction of property

(2)     The detention must be in a reasonable manner considering the offense involved and the circumstances of the detention.

(3)     The individual may not be detained any longer, than required to accomplish the earliest of the following:

(A)     The determination that neither of the events described in section .1504(m) above has occurred.

(B)     Surrender of the individual being detained to a law enforcement officer.

(4)     A staff member who detains another person must immediately notify a law enforcement officer and must, unless the staff member releases the person pursuant to section .1504 (m) (3) (A) above, surrender the person to the law enforcement officer.

(5)     This section does not pertain to situations in which contraband is found on the person or in the personal effects of a visitor. Any such contraband should be confiscated and local law enforcement should be notified as appropriate.

**EXHIBIT 1-H**      **Page 13 of 16**

Reasonable efforts short of the use of force should be utilized to encourage the visitor to remain until local law enforcement authorities arrive. If the visitor refuses to remain, as much descriptive and informative data as can be accumulated by correctional staff regarding the identity of the visitor and direction of departure and method of departure, should be communicated to the local law enforcement officers.

### .1505 MEDICAL RESPONSE

(a)  As soon as possible after the cessation of a use of force incident the Officer-In-Charge will have each offender involved in the use of force incident medically screened. The Office-In-Charge will determine whether or not imminent immediate medical attention is required. All persons injured in an incident will receive immediate medical examination and treatment. Application of one or more of the following circumstances will require immediate medical treatment:

    (1)  The offender complains of injury;

    (2)  Staff observe any injury;

    (3)  Staff employed a firearm, pepper spray, chemical mace, a baton or any other device likely to cause injury; or

    (4)  The amount of force used has rendered the offender immobile, unconscious or unable to communicate.

(b)  If no trained medical staff is available at the facility and the Officer-In-Charge determines the offender requires immediate medical attention, the offender will be transported to an appropriate medical facility. The triage nurse shall be informed of the transport to the emergency room but will not provide a medical assessment.

(c)  If no trained medical staff is available at the facility and the Officer-In-Charge determines immediate medical attention is not required, the offender will be evaluated and provided treatment as necessary as soon as trained medical staff returns to duty.

(d)  Immediate medical treatment is required following a use of force incident. Photographs will be taken at the facility as soon as is possible after the completion of the medical screening that shows a full view of the offender's face and body in order to document the offender's physical condition. If the taking of the photograph to document the offender's physical condition causes a potential risk of injury to the staff or offender, then the Officer-In-Charge shall determine that the photograph will not be taken and will document that determination on the Incident Report.

**EXHIBIT 1-H** **Page 14 of 16**

(e)     An offender's refusal of treatment shall be documented on both the Incident Report and the DC-442 Refusal of Treatment form with a copy of the DC-442 retained on file.

(f)     Any injury to staff will be evaluated, documented and treatment provided in accordance with Division of Prisons Health Care Procedures Sections 602 and 713.

## .1506 REPORTING PROCEDURES

Written reports are submitted to the facility head or designee no later that the conclusion of the tour of duty when any of the following occur: a discharge of a firearm or other weapon, use of chemical agents to control offenders, use of specialty impact munitions to control offenders, use of force to control offenders, offender(s) remain in restraints at the end of the shift.

(a)     Each correctional staff member involved in an incident requiring the use of force will immediately make a comprehensive report to the Officer-In-Charge of the facility. The report will include all relevant facts including the time and place of the incident, the names of all staff and offender participants and witnesses, specific nature, description, and duration of the use of force, and an explanation of the circumstances that made use of force necessary.

(b)     The Officer-In-Charge will report through the chain of command, or the Division Duty officer structure, any use of force incident involving firearms or any use of force resulting in serious injury to offenders or staff (See DOP Security Manual Section .0200, Reporting Procedures).

(c)     The Officer-In-Charge or designee will then investigate to determine whether the reports of the involved staff are accurate and complete and will order additional reports and information as necessary.

(d)     As part of the investigation, the Officer-In-Charge or designee shall:

1.     Obtain a statement from the involved offender to allow an explanation of the offender's version of the incident;

2.     Obtain statements from staff and offender witnesses;

3.     Review any facility video that displays any part of the incident pursuant to section .1507 of this policy.

4.     Obtain a statement from the facility health authority or other medical personnel who examined or treated the offender and/or staff; and

**EXHIBIT 1-H**                **Page 15 of 16**

5.      Make a determination as to whether the force used was in accordance with this policy.

(e)      The Officer-In-Charge or designee will report the results of the investigation on the standard OPUS Incident Report, and submit the report through the chain of command to the Region Director. Written statements of all witnesses should be attached.

(f)      Incident Reports should be completed within five (5) working days. Extensions may be granted by the facility head.

## .1507 VIDEO RECORDING OF USE OF FORCE INCIDENTS

(a)      Facilities designated by the Director of Prisons will use video cameras to record anticipated use of force incidents.

(b)      The facility head shall issue Standard Operating Procedures governing the operation, viewing and maintenance of videotape records.

(c)      During an emergency response operation, the Emergency Response Commander may deviate from the requirements of this policy.

(d)      Facility procedures will be approved by the appropriate Region Director and will include the following requirements:

(1)      A video recording shall be made of all incidents where correctional staff anticipates the use of physical force. The responsible supervisor or Officer-In-Charge shall be notified immediately of such an incident.

(2)      A sufficient number of staff shall be trained in the use of video equipment to ensure 24-hour availability.

(3)      A sufficient number of supervisors shall be designated as Incident Supervisors to direct the recording of anticipated use of force incidents.

(4)      Prior to taking corrective action against the offender, each recording will begin with an on-camera conflict Resolution with the Shift OIS, Confrontation Avoidance by the Incident Supervisor followed by a briefing of the staff by the Incident Supervisor regarding what is to take place. (refer to Security Manual Section .0800)

(5)      The audio/video recording of Anticipated Use of Force Incidents is of extreme importance. The recording should start when the Conflict Resolution begins and

**EXHIBIT 1-H**                    **Page 16  of 16**

should continue without interruption until the Anticipated Use of Force Incident is complete, up to and including the Concluding Statement stage.

(6)     The camera operator shall videotape the offender to include full view of the offender's face and body, immediately following the Use of Force in order to document the offender's physical condition, including injury, if any.  If the filming to document the offender's physical condition causes a potential risk of injury to the staff or offender, then the responsible supervisor or Officer-In-Charge shall determine that the filming will not occur and will document that determination on the video recording and in the Incident Report.

(7)     Any refusal by the offender to have his or her physical condition documented by video recording immediately following the conclusion of the Use of Force shall be recorded as part of the Concluding Statement and documented on the Incident Report.

(e)     Video Tape Records Maintenance and Use:

(1)     All videotape recordings will be documented by the Incident Supervisor on form DC-422A.

(2)     All video tape recordings of use of force incidents will be transcribed to a master video, documented on a master tape ledger, and maintained for five (5) years. No master tape will be disposed of without consultation with the Attorney General's Office to determine if the tape should be preserved for litigation purposes.

(3)     Viewing of videotapes will be for the purposes of investigation and other official departmental uses.

(4)     Any requests made to view or use video recordings shall be submitted to the facility head who shall recommend approval/disapproval and submit through their chain of command. The Director of Prisons or designee shall make the final decision regarding the viewing or use of video recordings by any persons for reasons other than internal investigations and official business outside Prisons.

_____                    _____09/03/2020_____
Commissioner of Prisons                          Review Date

F.1500_08_30_18.doc

Case 5:24-ct-03007-BO     Document 66-9     Filed 08/05/26     Page 16 of 16