# Exhibit Cover Page

OPPOSING STATEMENT OF
MATERIAL FACTS

EXHIBIT NUMBER 1-B

And said "I said get yo Bitch ass out my face" and Right after he said that Mr Howard lowered his head and bull Rushed Plaintiff and Mr. Miles while immediatly fallowing his bull Rush with punches. As you see at approx 7:23.55 (C-16) defendant Howard pushes and Attacks. Plaintiff responded by trying to Neutrilize the force. Defendant states that "Offendee Miles came so close to his chest, that to create a safe distance between them, Sgt Howard pushed Offender Miles." But as you see, Defendant Howard pushes both Plaintiff and offender Miles, and fallows up immediatly with striking punches! (C-16 Dinning Hall) Plaintiff did not 'began' assaulting Defendant Howard.

7. (Disputed) After being placed in the medical holding cell, Plaintiff declares that (staff) Defendants Howard, Johnson and Pearce returned to his cell later and assaulted him approx. 10 to 15 minutes later. Plaintiff did not yell for staff to loosen his cuffs. Plaintiff declares That Defendants Howard, Johnson, and Pearce came back to his holding cell. Plaintiff Declares that Defendant Pearce asked Plaintiff to walk backwards towards him so that he can take off his handcuffs. Plaintiff futher declares that once he got close enough for Officer Pearce to grab his handcuffs, he felt Pearce yank him by the cuffs, and thats when he felt blows to the back of his head, a flurry of punches and excessive mace by pulling Plaintiff's head back by his dreds and unloading mace in his eyes, mouth and nose, while other officers choked and kicked him, while his hands were cuffed behind his back. Plaintiff [illegible] that he was [illegible].

Case 5:24-ct-03007-BO Document 84 Filed 10/26/26 Page 2 of 10

Plaintiff had no contact with Officer Bridges during the Use of Force incidents. Officer Bridges did not decontaminate Plaintiff.

8. (Disputed) See OSMF Exhibit 1-B, paragraph 5[crossed out].

9. (Undisputed)

10. (Undisputed)

11. (Undisputed)

12. (Undisputed)

13. (Undisputed)

14. (Disputed) C-14 Breezeway shows Plaintiff walk into medical at 7:26.01.

15. (Undisputed)

16. (Disputed) The January 22, 2023, use of force incident was not thoroughly investigated.

17. (Disputed) See OSMF Exhibit 1-B, paragraph 5[crossed out].

18. (Undisputed)

19. (Disputed) Plaintiff did and was up from the table. Plaintiff did not Refuse to get up from the table. Plaintiff's issue was the manner of verbal disrespect Defendant Howard unprofessionally displayed while talking to Plaintiff and Mr. Miles. As you see at approx C-16 7:23.55 Howard pushes and attacks Plaintiff. Plaintiff responded by trying to neutrilize the force from Defendant Howard.

20. (Disputed) Plaintiff did not say "Fuck you, get out my Face" to Defendant Howard. If Officer felt any sign of possible threat, Defendant Howard was suppose to deploy his Mace after [crossed out] alleged verbal [illegible] both [illegible] with punches.

Case 5:24-ct-03007-BO Document 84 Filed 10/26/26 Page 3 of 10

21. (Disputed) See OSMF Exhibit 1-B, paragrahs 19-20, 5.
22. (Disputed) See OSMF Exhibit 1-B, paragraphs 19-20, 5.
23. (Undisputed)
24. (Disputed) See OSMF Exhibit 1-B, paragraphs 19-20, 5.
25. (Disputed) There is a genuine dispute of Defendant Howard's participation in the second use of force, located in the medical building. Defendant Howard alleges that after the incedent in the dining hall, he went to operations and did not see Plaintiff again that day or the fallowing days. On Breezeway video footage at C-14 Breezeway 7:26.46, you'll see Howard get onto the elivator.
C-56 Breezeway 7:26.01, Plaintiff walks into medical, escorted by Officer Kingsberry.
C-56 Breezeway 7:26.25, Mr Miles is carried into Medical.

On C-56 Breezeway 2ND FL. at 7:27.04, you'll see Defendant Howard come out of the elivator and walk into Medical with another officer at 7:27.16.

On C-64 2ND Floor Medical, video footage show Plaintiff being calmly placed into medical holding cell at 7:26.10, which is approx. 9 seconds after Plaintiff walks into medical escorted by Officer Kingsberry.

At 7:27.18, Mr. Miles is placed in Medical holding cell. Which means Officer Howard at 7:27.16, is walking into Medical, at the same time Mr. Miles is being placed into Holding cell.

The clearest evidence of Howards participation would have been the video of the Medical Hallway, which showed who went in and out of the cell where the second use of force occurred. However, as explained in Plaintiff's Spoliation Motion and Reply, the Defendants'

unreasonably failed to preserve the video in anticipation of litigation. This failure has prejudiced Plaintiff by depriving him of the use of the best evidence that existed. The only video that still exists supports Plaintiff. [Defendants MSJ Exhibit 1-F]. The only video that does exist shows Officer Howard following the Plaintiff into medical just moments before the video cuts off. When Plaintiff left the 2ND FL Breezeway view to the Medical To Dental Hallway view, it only took a few seconds. So when Officer Howard appears following the same path as Plaintiff through the 2ND FL Breezeway at 7:27 AM, he is a few seconds walk from the medical holding cell where the second use of force takes place. The video's cut off less than two minutes later, and according to Officer Pierce's statement, the second use of force occurred a few minutes after that footage ends. Defendants have failed to explain Officer Howard's appearance in the video footage this close to the time and location of the second use of force. And the defendants' have failed to preserve the video evidence that would objectively show whether Howard was present at the second use of force or not.

- Defendants point to officer statements on the incident report they produced about the uses of force. In response, Plaintiff points to the grievance and disciplinary appeal that he filed about this incident, both of which show that Plaintiff told prison officials that Howard came back with 3 more officers and maliciously and sadistically assaulted him. [Defendants MSJ Exhibit 1-H, Defendant Cooper, Dove, and Gethers Motion to Dismiss Exhibit 1-A].

- Defendants provide their own Declarations in support of their story about what happened. But Plaintiff has also provided his Declaration explaining what happened. And the credibility determinations must be made by a factfinder at trial, not as part of a Motion for Summary Judgment.
- Therefore Plaintiff has clearly established a genuine dispute.

The genuine dispute about whether Defendant Howard participated in second use of force is material to Plaintiff's excessive force claim against Defendant Howard, and against the other defendants.

- Officer Howard's participation goes directly to the court's legal analysis of whether the second use of force violated Plaintiff's Eighth Amendment Rights. The subjective factor looks at Defendants' motives in applying force—whether it was in good faith, or whether it was malicious and sadistic. Here, Officer Howard's participation in the second use of force is strong evidence of a malicious, retribution-driven use of force. When Plaintiff was already cuffed in a locked cell, what force was "necessary", and what threat was reasonably perceived? If the defendants wanted to appropriately "temper the severity of a forceful response" they would not allow someone who had just been in an altercation with Plaintiff to use force on him. Officer Howard's presence shifts the analysis of the subjective element significantly—both for the claims against Officer Howard, and the other Defendants' involved in the second use of force.

26. (Undisputed)

27. (Undisputed)

28. (Disputed) After the dining hall incident Defendant Johnson alleges that "staff attempted to check Plaintiff's restraints and adjust them if need be." Plaintiff Points back to [OSMF Exhibit 1-B, paragraph 25.]

29. (Undisputed)

30. (Undisputed)

31. (Disputed) See [OSMF Exhibit 1-B, paragraph 5.

32. (Undisputed)

33. (Undisputed)

34. (Undisputed)

35. (Disputed) Defendants allege that "Plaintiff was yelling for correctional staff to loosen his cuffs. Plaintiff points back to [OSMF Exhibit 1-B, paragraph 25 and Declaration.]

36. (Disputed) See [OSMF Exhibit 1-B, paragraph 25.]

37. (Disputed) Defendants' allege that other staff (Officer Wilson) placed Plaintiff on a flat surface. Plaintiff however points back to [OSMF Exhibit 1-B, paragraph 25,] and Plaintiff's [BIOMSI Exhibit 1-A].

38. (Disputed) See [OSMF Exhibit 1-B, paragraph 25] See [BIOMSI Exhibit 1-A] Plantiff was Never combative in Medical holding cell. Futhermore, Plaintiff was handcuffed with his hands behind his back. Vargus did not administer OC Pepper spray to gain control of Plaintiff, and officer Peace did not have to grab Plaintiff's hand and put it back in the handcuff.

39. (Undisputed)

40. (Disputed) MSI Exhibit 1-G shows where Plaintiff complained about his eyes still burning from being maced. (page 33 of 40) The Plaintiff has continued to have problems with his left eye since the second Use of Force incident.

This incident has cause Plaintiff's eye sight to go from 20/20 to 20/40. (See OSMF Exhibit 2, Bates 448 and Bates 311). Plaintiff was never decontaminated. Officer Bridges alleges that he decontaminated Plaintiff at 8:15 and Mr. Miles at 8:20, which Plaintiff disputes. If you look at (OSMF Exhibit 2, Bates 610 you'll see that Officer Bridges and Lt. Hicks was doing a Medical Transportation run with Offender Cass Kurt #1369123 at Duke Regional Hospital, I suppose since last night or longer since their names are not on the Master Shift Log for 1-22-2023. (See OSMF Exhibit 2, Bates 606-612)

41. (Undisputed)

42. (Disputed) Plaintiff would like to point back to [OSMF Exhibit 1- , paragraph 40. Also see [OSMF Exhibit 2, Bates 406 and Bates 412.]

43. (Undisputed)

44. (Disputed) See [OSMF Exhibit 1-B, paragraph 42] Also see Plaintiff's grievance and disciplinary Appeal [MSI Exhibit 1-H].

45. (Disputed) As a result of alleged actions, Plaintiff was charged with and found guilty of the use of Force in

the Dining Hall incident. Plaintiff explained in his Disciplinary Appeal How Sgt. Gregory was the Investigating Officer over the Dining Hall incident. "A couple days later a Lt. (Don't Know his Name) came and informed me that I was accused of another A-3 in the Medical Building. This time im aware and alert. He gave me a witness form. I requested physical evidence and gave a full statement in what really took place in the medical building when Officers attacked me and busted my face open. He asked me was I accusing his officers of Excessive Force. I asked him what did that mean? He walked off with a confused look. I went to the law library to see exactly what that ment. And that's when I learned that my Right to protection of the Eighth Amendment had been violated. I never heard back from Lt. since." After receiving my discovery and putting the Name with the face, Lt. Hicks was the Lt. that came to me about the Use of Force incident in the Medical Holding Cell. But once I requested physical evidence and wrote a full statement, I never heard back from him or the write-up.

The only write up I received, Sgt. Gregory was the Investigating Officer. See [MSJ Exhibit 1-H, pages 22 and 23] Then look at [MSJ Exhibit 1-E, page 27], The statement Plaintiff gave on MSJ Exhibit 1-H, page 23 was the Dining Hall incident, which he explained how he was mentally drained and exhausted due to circumstances explained in Plaintiff's Disciplinary Appeal. That Sgt. Gregory.

Case 5:24-ct-03007-BO Document 84 Filed 10/26/26 Page 9 of 10

But if you look at [MSJ Exhibit 1-E, page 27] Plaintiff's statement about the Second Use of Force incident, you'll see where Plaintiff requested Physical evidence, and furthermore you'll see Lt. Hicks as the Investigating Officer. I never heard back from him about the A-3 for the Medical building Holding cell. But some how, Lt. Hicks has sled into the Dining Hall incident and trying to down play the Medical Building Use of force incident.

46. (Disputed) Please see [OSMF Exhibit 1, paragraph 45].

47. (Disputed) See [OSMF Exhibit 1, paragraph 45]

Plaintiff was subjected to a "cold cell and was denied Blanket, Sheets, Wash Rag, Towel, Soap, toothbrush, etc. For 3 days I had to lay on a bare mat, body shivering from being cold with mace still in my eyes, face, hair, clothes and all. (1-22-23)." Which led to Plaintiff being Mentally drained and exhausted under intentional neglicted circumstances.

48. (Disputed) [See OSMF Exhibit 1-, paragraph 19-20, 5.].

49. (Undisputed)

50. (Undisputed)

51. (Undisputed)

52. (Undisputed)

This the 21st day of October 2026

Darius T. Brooks
Plaintiff